Aug 15, 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **19-60231-CR-ALTMAN/HUNT**

18 U.S.C. § 371
18 U.S.C. § 981(a)(1)(C)

UNITED STATES OF AMERICA

vs.

ALAN G. HEIDE,

    Defendant.
_____/

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times material to this Information:

1. 1 Global Capital LLC ("1 Global") was a Florida limited liability company with its principal place of business in Hallandale Beach.

2. Individual #1 acted as the Chief Executive Officer of 1 Global from at least in or around February 2014, through in or around July 2018.

3. Defendant **ALAN G. HEIDE** was employed at 1 Global from in or around February 2014, through in or around August 2017, initially as the Chief Financial Officer and later as the Executive Vice President and Director, Syndicate Partner Relations.

### CONSPIRACY TO COMMIT SECURITIES FRAUD
(18 U.S.C. § 371)

From in or around November 2015, through in or around July 2018, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

## ALAN G. HEIDE,

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with Individual #1 and others, known and unknown to the United States Attorney, to commit certain offenses against the United States, that is, to knowingly, willfully, and unlawfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, directly and indirectly, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, and (a) employ a device, scheme and artifice to defraud; (b) make untrue statements of material fact and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices and courses of business which would and did operate as a fraud and deceit upon any person, in connection with the purchase and sale of securities; in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5.

## PURPOSE OF THE CONSPIRACY

4.  It was a purpose of the conspiracy for the defendant and his conspirators to use false and fraudulent statements to investors concerning the operation and profitability of 1 Global, so that investors would provide funds to 1 Global, and continue to make false statements to investors thereafter so that investors would not seek to withdraw funds from 1 Global, all so that the conspirators could misappropriate investors' funds for their personal use and enjoyment.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and his conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

5. Individual #1 owned and controlled 1 Global through certain entities that he also controlled, including a purported family trust. Individual #1 had ultimate decision-making authority at 1 Global and was actively involved in financial matters, marketing, payments, and interactions with persons and entities who provided funding to 1 Global.

6. 1 Global purportedly operated as a lending business to merchants, providing short-term loans referred to as merchant cash advance ("MCA") loans. 1 Global obtained funds for its operations and other purposes by raising money from investors (sometimes referred to as "lenders" or "syndicate partners") in the form of investment contracts with the promise of a return on the investor's investment. Individual #1, **ALAN G. HEIDE**, and their conspirators made false and misleading representations to investors and potential investors as to the profitability of 1 Global's business and, once an investment was made, concerning the status and profitability of investors' investments. Individual #1, **HEIDE**, and their conspirators made these false statements in marketing materials and periodic account statements that were transmitted via the U.S. mail and in interstate email communications.

7. 1 Global raised money from investors by representing that all or nearly all of that money would be applied to various MCA agreements with the investor supposedly receiving a portion of the proceeds paid back by the merchants under the MCA agreements. 1 Global purportedly applied a portion of the investor's funds to MCA loans, and held the remaining portion as "cash not deployed" in its own accounts until it could be utilized as part of an MCA loan. In reality, at the direction of Individual #1, **ALAN G. HEIDE** and other conspirators caused funds obtained from investors to be used for purposes other than MCA loans in a manner that benefited Individual #1 and the conspirators, and that was inconsistent with the representations made to investors as to how their funds would be used.

8. Throughout the operation of 1 Global, investors and potential investors would raise questions about the financial condition of 1 Global, whether 1 Global had an independent auditor who performed an independent audit or financial analysis related to 1 Global, and the status of investors' investments. **ALAN G. HEIDE** participated in providing false and misleading statements to investors that gave the false impression that 1 Global had an independent auditor. In or around November 2015, Individual #1 directed **HEIDE** to cause monthly statements to be sent to investors via the U.S. mail that gave the false impression that the return reported to investors had been independently verified by an outside audit firm ("Audit Firm #1"). In or around July 2016, at the direction of Individual #1, **HEIDE** and others changed the wording of the monthly statements and described Audit Firm #1 as the "independent audit firm" for 1 Global. This was false, because 1 Global never had an independent audit. Nonetheless, Individual #1, **HEIDE**, and others continued to falsely describe the role of Audit Firm #1 to investors and potential investors in periodic account statements and conversations in order to provide false comfort to investors.

9. Contrary to the financial picture provided to investors, **ALAN G. HEIDE** knew that 1 Global was not profitable and used investors' funds for purposes other than MCA agreements. As time went on, at the direction of Individual #1, **HEIDE** and others used the "cash not deployed" funds that were received from new investors, to fund (a) ongoing operating expenses, as 1 Global experienced ongoing losses, including for large commission payments to 1 Global employees or contractors who raised investor money, (b) the lavish personal lifestyle expenses of Individual #1 and his family members, (c) other businesses unaffiliated with 1 Global for which Individual #1 and his family members would receive an ownership interest, but the 1 Global investors would receive no interest, and (d) to pay back earlier investors who sought to

cash out of their investments, but for which there were insufficient proceeds generated from the MCA loans to fund such payments.

10. **ALAN G. HEIDE** knew that 1 Global had a significant cash shortfall between the "cash not deployed" amounts that had been received from investors and the actual cash that 1 Global had on hand. **HEIDE** also knew that that this cash shortfall continued to increase over time and, because 1 Global used the cash derived from new investor money to pay back obligations to earlier investors, 1 Global came to operate in a manner consistent with a Ponzi scheme. Nonetheless, 1 Global continued to operate and raise money from new investors by using false and misleading statements as to its own financial condition, and **HEIDE** and his conspirators continued to make false statements concerning the state of the investors' investments. Individual #1, **HEIDE**, and others also continued to use large commission payments that induced investment advisors and others to attract new investor money into the business. During the time **HEIDE** worked there, 1 Global did not collapse because it was able to raise a sufficient amount of new investor money every month to fund its monthly operating losses as well as the various transfers directed by Individual #1 for his personal benefit.

11. **ALAN G. HEIDE** discussed the fact that 1 Global was not profitable with Individual #1, including that 1 Global had a significant cash shortfall. **HEIDE** also confronted Individual #1 and stated that Individual #1 had taken more funds from the company than he had put into the company. Nonetheless, Individual #1 continuously directed **HEIDE** and other 1 Global employees to make financial transfers from various 1 Global bank accounts for the personal benefit and use of Individual #1 and his family members. Eventually, these financial transfers constituted amounts well in excess of Individual #1's purported investment into the business. **HEIDE** knew it was wrong to continue to participate in this activity but he did so in order to keep his job and avoid the legal and financial consequences that would occur if 1 Global collapsed.

5

12. Individual #1, **ALAN G. HEIDE**, and others contributed to and reviewed marketing materials that contained false and misleading statements to investors concerning the safety and security of their investment in 1 Global, including by falsely describing the role of Audit Firm #1, falsely presenting 1 Global as having a profitable track record, and falsely describing the current status of investors' investments (including that Audit Firm #1 periodically reviewed or confirmed the status of investors' investments). By approximately early 2017, the cash deficit at 1 Global was so great that no independent audit could be obtained by 1 Global without qualifications that would reveal the cash deficit or that would raise substantial doubt whether 1 Global could continue to operate as a "going concern." **HEIDE** and Individual #1 discussed the inability of 1 Global to obtain an audit for these reasons, but Individual #1 continued to direct **HEIDE** and others to make false and misleading statements concerning the role of Audit Firm #1 in investor statements and marketing materials.

13. On or about July 27, 2018, 1 Global filed for bankruptcy, after having fraudulently raised more than $330 million from more than 3,600 investors. As of approximately June 30 2018, 1 Global's internal financial records showed a cash shortfall of more than $50 million in missing investor funds.

## OVERT ACTS

In furtherance of the conspiracy and to achieve the objects and purpose thereof, at least one conspirator committed and caused to be committed, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

1. On or about November 3, 2015, in Hallandale Beach, Florida, **ALAN G. HEIDE** transmitted an email to Investment Advisor A, copied to Individual #1 and other 1 Global executives, that passed through and was located on computer servers in Louisiana, that included a pitch deck marketing package concerning 1 Global, containing false and misleading statements,

6

that an "External Independent CPA Firm validates Syndicate Partner [investor] portfolio balances quarterly."

2.      On or about June 6, 2016, in Hallandale Beach, Florida, **ALAN G. HEIDE** caused an investor statement to be sent via U.S. Mail to Investor #1 in Baton Rouge, Louisiana, falsely describing the status of the investor's investment in 1 Global and stating that "[o]ur independent audit firm, [Audit Firm #1], has endorsed and agrees with the [return on investment] ROI formula."

3.      On or about February 10, 2017, in Hallandale Beach, Florida, **ALAN G. HEIDE** caused an investor statement to be sent via U.S. Mail to Investor #1 in St. Francisville, Louisiana, falsely describing the status of the investor's investment in 1 Global and stating that "[o]ur independent audit firm, [Audit Firm #1], has endorsed and agrees with the rate of return formula."

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE
## (18 U.S.C. § 981(a)(1)(C))

1.      The allegations of this Information are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendant, **ALAN G. HEIDE**, has an interest.

2.      Upon conviction of a violation of Title 18, United States Code, Section 371, as alleged in this Information, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offense of conviction.

3.      If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

       a. cannot be located upon the exercise of due diligence;

       b. has been transferred or sold to, or deposited with, a third party;

       c. has been placed beyond the jurisdiction of the court;

      d. has been substantially diminished in value; or

      e. has been commingled with other property which cannot be divided without difficulty.

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and the procedures set forth in Title 21, United States Code, Section 853, made applicable through Title 28, United States Code, Section 2461(c).

_____
ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

_____
JERROB DUFFY
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

ALAN G. HEIDE,

Defendant. /

CASE NO. _____

# CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division**: (Select One)
- ___ Miami
- ___ Key West
- ✓ FTL
- ___ WPB
- ___ FTP

New defendant(s)        Yes ___  No ___
Number of new defendants  ___
Total number of counts    ___

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No)  No
   List language and/or dialect  _____

4. This case will take __0__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I    0 to 5 days      ✓
   - II   6 to 10 days     ___
   - III  11 to 20 days    ___
   - IV   21 to 60 days    ___
   - V    61 days and over ___

   (Check only one)
   - Petty    ___
   - Minor    ___
   - Misdem.  ___
   - Felony   ✓

6. Has this case previously been filed in this District Court?  (Yes or No)  No
   If yes: Judge _____  Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?  (Yes or No)  No
   If yes: Magistrate Case No. _____
   Related miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____

   Is this a potential death penalty case? (Yes or No)  No

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?  Yes ___  No ✓

8. Does this case originate from a matter pending in the Northern Region U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?  Yes ___  No ✓

_____
JERROB DUFFY
ASSISTANT UNITED STATES ATTORNEY
Court ID No. A5501106

*Penalty Sheet(s) attached

REV 8/13/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: ALAIN G. HEIDE

**Case No**: _____

Count #: 1

Conspiracy to Commit Securities Fraud

Title 18, United States Code, Section 371

* **Max. Penalty**:    Five (5) years' imprisonment

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>**ALAN G. HEIDE,**<br>_Defendant_ | )<br>)  Case No.<br>)<br>)<br>) |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
_Defendant's signature_

_____
_Signature of defendant's attorney_

**DERIC ZACCA**
_Printed name of defendant's attorney_

_____
_Judge's signature_

_____
_Judge's printed name and title_