UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  19-60231-CR-ALTMAN/HUNT

UNITED STATES OF AMERICA,

v.

ALAN G. HEIDE,

      Defendant.

_____/

## PLEA AGREEMENT

The United States of America and Alan G. Heide ("Heide" or "Defendant") (hereinafter "Defendant") enter into the following agreement:

1.    The Defendant understands that he has the right to have the evidence and charges against him presented to a federal grand jury for determination of whether or not there is probable cause to believe he committed the offenses with which he is charged.  Understanding this right, and after full and complete consultation with his counsel, the Defendant agrees to waive in open court his right to prosecution by indictment and agrees that the United States may proceed by way of an information to be filed pursuant to Rule 7 of the Federal Rules of Criminal Procedure.

2.    The Defendant agrees to plead guilty to one count of conspiracy to commit securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5, all in violation of Title 18, United States Code, Section 371.  In exchange for Defendant's agreement to plead guilty, and for fulfilling all of his other obligations set forth in this Plea Agreement ("Agreement"), and subject to the limitations and provisions set forth in the Agreement, the Office of the United States Attorney for

the Southern District of Florida (hereinafter "Office"), agrees not to prosecute Defendant for any other offenses arising out of the conduct described in paragraph 19 below. This Agreement includes only the conduct set forth in paragraph 19 below, and excludes crimes of violence and any tax offense. This Agreement is also limited to this Office, and as such, does not and cannot bind other federal, state, regulatory, or local prosecuting authorities. This Agreement is further conditioned on Defendant's fulfilling all of the terms of this Agreement.

3.      The Defendant is aware that the sentence will be imposed by the Court after considering the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The Defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a Pre-Sentence Investigation by the court's probation office, which investigation will commence after the guilty plea has been entered. The Defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The Defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose that sentence; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory sentence. Knowing these facts, the Defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offenses identified in paragraph 2, and that the Defendant may not withdraw the plea solely as a result of the sentence imposed.

4.      The Defendant also understands and acknowledges that the Court may impose a statutory maximum term of imprisonment of five years for the count to be charged in the Information, followed by a term of supervised release of up to three years.  In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $250,000 or double the gross gain or gross loss, and must order restitution.  The Defendant further understands and acknowledges that, in addition to any sentence imposed, a special assessment in the amount of $100 will also be imposed on the Defendant.  The Defendant agrees that any special assessment imposed shall be paid at the time of sentencing unless he is deemed financially unable to do so by the Court.

5.      The Defendant agrees that he will make restitution in an amount to be determined by the Court.  The Defendant understands and agrees that the Government and any victim of the crime charged in Count 1 of the information may provide evidence to the Court for the purpose of a determination as to restitution.  The Defendant understands and agrees that the term "victim" means a person or entity directly and proximately harmed as a result of the commission of an offense of conviction for which restitution may be ordered including, in the case of a scheme, pattern, or conspiracy, any person directly harmed by the Defendant's criminal conduct in the course of the scheme, pattern, or conspiracy, as set forth in Title 18, United States Code, Section 3663A.  The parties reserve the right to argue the appropriate amount of restitution at the time of sentencing.

6.      The Defendant agrees to forfeit to the United States, voluntarily and immediately, and interest to any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense to which is pleading guilty pursuant to Title 18 United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

7.     The defendant further agrees that forfeiture is independent of any assessment, fine, cost, restitution order, or any penalty that may be imposed by the Court.  The defendant knowingly and voluntarily agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine or penalty with respect to any forfeited property. In addition, the defendant agrees to waive any applicable time limits for administrative or judicial forfeiture proceedings brought against any forfeited property, and any appeal of the forfeited property.

8      The defendant also agrees to assist this Office in all proceedings, administrative or judicial, involving forfeiture to the United States of any property, including substitute property, regardless of its nature, form, or location.  The assistance shall include: full disclosure of any asset, identifying any property subject to forfeiture, providing testimony before a federal grand jury or in an administrative or judicial proceeding, consenting to the entry of an order enjoining the transfer or encumbrance of such property, and transferring such property to the United States by delivering to this Office, upon this Office's request, any necessary and appropriate documentation, including consents to forfeiture and quit claim deeds, to deliver good and marketable title to such property.

9.     The Defendant agrees that upon executing this Plea Agreement during the pendency of this case including any period of supervised release that may be imposed, Defendant will have no involvement, directly or indirectly, in the offer or sale of securities, or as an employee, contractor, or agent of any entity that is an issuer of securities, absent prior authorization of the Court.

10.     The Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the Defendant and the Defendant's background.  Subject only to the express terms of any agreed-upon sentencing recommendations

4

contained in this Agreement, the Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

11.     The Office will recommend at sentencing that the court reduce by two levels the sentencing guideline level applicable to the Defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the Defendant's recognition and affirmative and timely acceptance of personal responsibility.  If at the time of sentencing the Defendant's offense level is determined to be 16 or greater, the Government will make a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the Defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the court to allocate their resources efficiently.  The United States, however, will not be required to make these recommendations if the Defendant: (a) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (b) is found to have misrepresented facts to the Government prior to entering into this Agreement; or (c) commits any misconduct after entering into this Agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any Governmental entity or official.

12.     The Office and the Defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed on the count to which the Defendant shall plead:

a.     Applicable Guideline Offense and Base Offense Level:

Pursuant to Section 2B1.1 of the Sentencing Guidelines, the offense guideline applicable to Count One, the base offense level is 6.

b.   Specific Offense Characteristics:

The parties agree and stipulate that the following offense characteristics apply: (1) The parties reserve their respective positions as to the applicable loss to be applied under Section 2B1.1(b)(1), and that each party may make any factual or legal arguments it deems appropriate at the time of sentencing as to this characteristic; (2) the offense involved 10 or more victims pursuant to Section 2B1.1(b)(2)(A)(i) resulting in a 2-level increase; (3) the offense involved sophisticated means under Section 2B1.1(b)(10)(C), resulting in a 2-level increase; and (4) the offense involved Defendant abusing a position of trust or use of a special skill, specifically his accounting knowledge and Certified Public Accountant qualification, pursuant to Section 3B1.3, resulting in a 2-level increase.

The Office and the Defendant both agree to jointly recommend application of the above guidelines, except each party reserves its position as to applicable loss. This Agreement does not prohibit Defendant from arguing for a downward departure pursuant to Section 2B1.1, Application Note 20, or a variance, as described in Section 1B1.1, Background, with respect to the amount of proceeds Defendant actually received relative to the loss amount that applies for guideline calculation purposes. Defendant may make such a variance argument as to the guideline calculation only after recommending application of the above-referenced guidelines. The Government has informed the Defendant that it will oppose any such argument, but reserves its position. After recommending that the Court apply the guidelines in a manner consistent with this

paragraph, either party may make additional sentencing arguments, including as to the ultimate sentence requested, under the factors set forth in 18 U.S.C. § 3553(a).

13.     The Defendant is aware that the sentence has not yet been determined by the Court. The Defendant also is aware that any estimate of the probable sentencing range or sentence that the Defendant may receive, whether that estimate comes from the Defendant's attorney, the Government, or the probation office, is a prediction, not a promise, and is not binding on the Government, the probation office or the Court. The Defendant understands further that any recommendation that the Government makes to the Court as to sentencing, whether pursuant to this Agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The Defendant understands and acknowledges, as previously acknowledged in paragraph 3 above, that the Defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the Defendant, the Government, or a recommendation made jointly by both the Defendant and the Government.

14.     The Defendant agrees that he shall cooperate fully with this Office by, among other things: (a) providing truthful and complete information and testimony, and producing documents, records and other evidence, when called upon by this Office, whether in interviews, before a grand jury, or at any trial or other court proceeding; (b) appearing at such grand jury proceedings, hearings, trials, and other judicial proceedings, and at meetings, as may be required by this Office; and (c) cooperating with any regulatory agency as requested by this Office. In addition, the Defendant agrees that he will not protect any person or entity through false information or omission, that he will not falsely implicate any person or entity, and that he will not commit any further crimes.

15.     The Office reserves the right to evaluate the nature and extent of the Defendant's cooperation and to make the Defendant's cooperation, or lack thereof, known to the Court at the time of sentencing.  If in the sole and unreviewable judgment of this Office the Defendant's cooperation is of such quality and significance to the investigation or prosecution of other criminal matters as to warrant the court's downward departure from the advisory sentence calculated under the Sentencing Guidelines, this Office may at or before sentencing make a motion consistent with the intent of Section 5K1.1 of the Sentencing Guidelines prior to sentencing, or Rule 35 of the Federal Rules of Criminal Procedure subsequent to sentencing, reflecting that the Defendant has provided substantial assistance and recommending that the Defendant's sentence be reduced from the advisory sentence suggested by the Sentencing Guidelines.  The Defendant understands and agrees, however, that nothing in this agreement requires this Office to file any such motions, and that this Office's assessment of the quality and significance of the Defendant's cooperation shall be binding as it relates to the appropriateness of this Office's filing or non-filing of a motion to reduce sentence.

16.     The Defendant understands and acknowledges that the Court is under no obligation to grant the motion(s) referred to in this Agreement should the Government exercise its discretion to file any such motion.  The Defendant also understands and acknowledges that the Court is under no obligation to reduce the Defendant's sentence because of the Defendant's cooperation.

17.     The Defendant is aware that Title 18, United States Code, Section 3742 and Title 28, United States Code, Section 1291 afford the Defendant the right to appeal the sentence imposed in this case.  Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the Defendant hereby waives all rights conferred by Sections 3742 and 1291 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which

the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing. The Defendant further expressly waives his right to appeal based on arguments that (a) the statute to which the Defendant is pleading guilty is unconstitutional and (b) the Defendant's admitted conduct does not fall within the scope of the statute. The Defendant further understands that nothing in this agreement shall affect the Government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b) and Title 28, United States Code, Section 1291. However, if the United States appeals the Defendant's sentence pursuant to Sections 3742(b) and 1291, the Defendant shall be released from the above waiver of appellate rights. By signing this agreement, the Defendant acknowledges that the Defendant has discussed the appeal waiver set forth in this agreement with the Defendant's attorney.

18.     In the event the Defendant withdraws from this Agreement prior to pleading guilty or breaches the Agreement before or after he pleads guilty to the charges identified in paragraph two (2) above or otherwise fails to fully comply with any of the terms of this Plea Agreement, this Office will be released from its obligations under this Agreement, and the Defendant agrees and understands that: (a) the Defendant thereby waives any protection afforded by any proffer letter agreements between the parties, Section 1B1.8 of the Sentencing Guidelines, Rule 11(f) of the Federal Rules of Criminal Procedure, and Rule 410 of the Federal Rules of Evidence, and that any statements made by the Defendant as part of plea discussions, any debriefings or interviews, or in this Agreement, whether made prior to or after the execution of this Agreement, will be admissible against the Defendant without any limitation in any civil or criminal proceeding brought by the Government; and (b) the Defendant stipulates to the admissibility and authenticity, in any case brought by the United States in any way related to the facts referred to in this Agreement, of any

documents provided by the Defendant or the Defendant's representatives to any state or federal

agency and/or this Office.

19.     The Defendant hereby (i) confirms that he has reviewed the following facts with

legal counsel, (ii) adopts the following factual summary as his own statement, (iii) agrees that the

following facts are true and correct, and (iv) stipulates that the following facts provide a sufficient

factual basis for the plea of guilty in this case, in accordance with Rule 11(b)(3) of the Federal

Rules of Criminal Procedure:

From in or around 2014 through in or around August 2017, Defendant Alan G. Heide ("Heide" or "Defendant") worked at 1st Global Capital LLC, initially in the capacity as Chief Financial Officer, and later as Executive Vice President and Director, Syndicate Partnership Relations. 1st Global Capital LLC was owned and/or controlled, directly and indirectly, by Individual #1. 1st Global Capital LLC and certain of its affiliate and predecessor entities (collectively "1GC"), was used by Individual #1 to fund other businesses that Individual #1 owned or controlled, directly or indirectly, including through certain trust or nominee ownership arrangements. Defendant acted at the direction of Individual #1 throughout his employment, and Individual #1 was actively involved and had ultimate decision authority in all financial matters, marketing, payments, and interactions with persons and entities who provided funding to 1GC.

1GC purportedly operated as a lending business to merchants, providing short-term loans referred to as merchant cash advance ("MCA") loans. During the operation of 1GC, Defendant came to learn that 1GC obtained funds from potential investors (sometimes referred to as "lenders" or "syndicate partners"). Substantial questions arose during the operation of the business as to whether 1GC operated in violation of Florida's usury and tax collection laws related to a lending business, and whether 1GC was offering or selling a security in violation of federal or State securities laws. At the direction of Individual #1, employees and persons working for 1GC, specifically intentionally used inaccurate, incomplete, and misleading information to provide comfort to investors and investment advisors, as to the legality of the business operations of 1GC.

1GC raised money from investors and purportedly applied some or all of that money to MCA agreements, with the investor supposedly subsequently receiving a portion of the proceeds paid back by the merchant under the MCA agreements. Throughout the operation of 1GC, investors and potential investors would raise questions about the financial condition of 1GC, and whether 1GC had an independent auditor who performed an independent audit or financial analysis related to 1GC and the status of investors' investments. 1GC purportedly applied

a portion of the investor's funds to MCA loans, and held the remaining portion as "cash not deployed" in its own accounts.

In reality, Defendant came to learn that 1GC was not profitable. As time went on, and at the direction of Individual #1, 1GC came to use the "cash not deployed" cash received from new investors to fund (a) ongoing operating expenses (including large commission payments) in the face of ongoing losses, (b) the personal lifestyle expenses of Individual #1 and his family members, (c) the other unaffiliated businesses for which Individual #1 and his family members would have an ownership interest, but the investors would have no interest, and (d) to pay back older investors who sought to cash out of their investments, for which there were insufficient profits or proceeds generated from the MCA loan proceeds. The difference between the ever-increasing "cash not deployed" amounts that had been received from investors (and thus the obligation to pay back investors), and the actual cash that 1GC had on hand, after paying for all the items referenced above, caused 1GC to operate in a manner consistent with a Ponzi scheme. Nonetheless, 1GC continued to operate and raise money from new investors by using false and misleading statements as to its own financial condition, the state of investors' investments, and by use of large commission payments that induced investment advisors and others to attract new investor money into the business. During the time Defendant worked there, 1GC did not collapse because it was able to raise a sufficient amount of new investor money every month to fund its monthly operation expenses as well as the various transfers directed by Individual #1.

Defendant raised his observations that 1GC was not profitable with Individual #1, and that 1GC had a cash shortfall. Defendant also confronted Individual #1 and stated that Individual #1 had taken more funds from the company than he had put into the company. Nonetheless, Individual #1 continuously directed Defendant and other 1GC employees to make financial transfers of funds from various 1GC bank accounts, for the personal benefit and use of Individual #1 and his family members. This included funding other unaffiliated business, funding Individual #1 and his family's lavish lifestyle, and making various payments for activities that were not related to funding MCA loans. Eventually, these transfers constituted amounts well in excess of Individual #1's investment into the business. By late 2016 at least, these transfers constituted nothing more than misappropriations of investor cash that had not been deployed to an MCA agreement, and were instead deployed at Individual #1's direction for his own use.

Defendant participated in providing false and misleading statements to investors as to the financial health of 1GC, including by making statements that gave the false impression that 1GC had an independent auditor. In or around November 2015, Individual #1 directed Defendant to cause monthly statements to be sent to investors that gave the false impression that the return reported to investors had been independently verified by an outside audit firm ("Audit Firm #1"), prior to any agreed-upon procedures being completed by Audit Firm # 1. In or around July 2016, at the direction of Individual #1, Defendant and others

changed the wording of the monthly statements and described Audit Firm #1 as the "independent audit firm" for 1GC. This was false, because 1GC never had an independent audit. Nonetheless, Individual #1 and Defendant and others, at the direction of Individual #1, continued to falsely describe the role of Audit Firm #1 to investors or potential investors during conversations with investors. Individual #1, Defendant and others, also contributed to and reviewed marketing materials that gave a false and misleading impression to investors as to the role of Audit Firm #1, the financial condition of 1GC, and the status of investors' investments (including that Audit Firm #1 periodically reviewed or confirmed the status of investors' investments). Defendant and others caused these false and misleading investor statements, and marketing materials containing such statements, to be transmitted in interstate commerce, including by use of the mail and email sent across state lines. By early 2017, the cash deficit at 1GC was so great that no independent audit could be obtained by 1GC without qualifications that would reveal the cash deficit or that would result in an opinion that 1GC may not be able to sustain its ability to continue to operate as a "going concern." Defendant and Individual #1 discussed the inability of 1GC to obtain an audit for these reasons.

Defendant left his employment at 1GC in or around August 2017. Defendant thereafter provided a statement to the FBI during a telephone interview in or around August 2018, and later to the U.S. Securities and Exchange Commission in or around March 2019. During these statements, Defendant was not truthful regarding how investors were misled during the operation of 1GC, relating to the role of Audit Firm #1 in the business.[1]

20.   This Office agrees that it will not seek additional upward specific offense characteristics, enhancements, or upward departures to or from the Defendant's offense level beyond those, if any, specifically referred to in this Agreement, except that this Office shall have the right in its discretion to seek additional upward specific offense characteristics, enhancements, or upward departures to or from the Defendant's offense level beyond those, if any, specifically

_RkA_

---

[1]   I, Alan G. Heide, after having completed plea negotiations and reached a plea agreement with the United States, hereby affirm that I understand the foregoing and voluntarily and knowingly adopt the Factual Basis set forth in paragraph 19 as my own statement. This statement is intended to be a post-plea discussion statement and is not protected by Criminal Procedure Rule 11(e)(6) or Federal Rule of Evidence 410. No promises or inducements have been made to me other than those contained in this Plea Agreement. I am satisfied with the representation of my attorney in this matter.
Defendant _____ and Defense Counsel _____

referred to in this Agreement where any such additional upward specific offense characteristics, enhancements, or upward departures to or from the Defendant's offense level would be based on conduct occurring after the Defendant enters into this Agreement.    The Defendant and the Government agree that they will jointly recommend that the Court calculate the guideline level in accordance with the calculations set forth in this Plea Agreement.    The parties agree that the Defendant is not precluded from making additional sentencing arguments or factual presentations pursuant to 18 U.S.C. § 3553(a), and the Government may oppose any such factual presentation or argument.

21.    This Plea Agreement between the parties is the entire agreement and understanding between the United States of America and the Defendant.    There are no other agreements, promises, representations, or understandings.

ARIANA ORSHAN FAJARDO
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

Date: 8/23/19          By: _____
                            JERROB DUFFY
                            ASSISTANT U.S. ATTORNEY

FOR THE DEFENDANT:

Date: 8/03/15          By: _____
                            DERIC ZACCA, ESQ.
                            ATTORNEY FOR DEFENDANT

Date: 8/03/15          By: _____
                            ALAN G. HEIDE
                            DEFENDANT

13